Curia, per Sutherland, J.
The lessor of the plaintiff claimed title to the premises in question, under a judgment in his favor against one Daniel Gridley, obtained before a justice of the peace, on the 24th of March, 1820. A tran *249 script of the judgment was filed in the county clerk’s office, and the judgment duly docketed on the 4th of April, 1820. An execution was issued on the same day, and returned nulla bona, on the 15th of July. On that day an alias execution was issued, and was delivered to David Pierson, the deputy sheriff, on the 18th of the same month. He immediately levied upon the premises in question, then in the possession of Gridley, the defendant in the execution, and on the 13th of October following, sold them by virtue of the execution, to the lessor of the plaintiff. The certificate of sale was duly filed; and on the 16th of January, 1822, a deed was given to the lessor in the name of John B. Pease, as late sheriff of Oneida county; but executed by David Pierson, the deputy, to whom the execution had been delivered as deputy, to the then late sheriff. This deed was duly executed by Pierson, and recorded in the clerk’s office of Oneida county, on the 17th of December", 1822.
*The defendant objected to the preceding evidence:
1. On the ground that the plaintiff had not proved that any judgment had ever been recovered by the lessor of the plaintiff against Daniel Gridley; and he contended that the transcript of the judgment filed in the clerk’s office, was not competent evidence of the judgment itself; but that the plaintiff was bound to prove by other evidence, that the judgment had in fact been rendered before the justice, and that he had jurisdiction in the premises ; that the transcript was a mere authority to the clerk to enter or docket the judgment, and did not supersede the necessity of proving the judgment in the same manner as other judgments before justices of the peace are proved. He also contended that the transcript was not a record, and could not be proved by an exemplification.
These objections were overruled and the defendant proceeded to his defence; and gave in evidence, 1. An exemplification of a judgment record in ejectment in favor of the defendant Tuttle against Daniel Gridley, for the recovery of the premises in question. The placita and memorandum of the record were of August term, 1818; *250 and? the-judgment'was perfected upon- a relicta and* cognovit, signed by Theodore- Sill, the attorney for- Gridley,, on* the 12th of August, 1820.
He also gave-in evidence an exemplification, of a Writ.of possession issued* upon the* judgment", tested* the 7-th day of August, 1820; and returnable- the then next* October term, with an endorsement by the. deputy sheriff, thatihehad delivered the premises* in question to- Tuttle. It-was admitted that the possession was; so changed under the-writ, in- August, l-820i
The defendant-then proved an arbitration bond between Gridley and himself, dated the 3*lst of May; 1820, submitting. all matters- in difference- between them- to. certain, arbitrators-named therein ; and* also an award of the arbitrators made in pursuance of the submission, and bearing date the 14th- of July, 1820, by which- among other things-, they directed1 that Gridley should deliver up-to* Tiittle the-premises in question, then in his possession, on- or- before* the first Monday in, August then next; and that the ejectment suit before mentioned- should remain- as- a security for that purpose; *and that if Gridley did not deliver up; the possession by the day before mentioned", then that he or his attorney should immediately after that day give a confession of judgment in that suit, to- enable- Tuttle- to obtain the possession.
Theodore. Sill, the attorney for Grid-ley in the ejectment suit, and also before the arbitrators, testified that the ejectment suit was once tri-edj Beforb the differences- between* Gridley and Tuttle were referred- to arbitration ;■ that the, verdict which- was then rendered- was set aside by the supreme court. That the proceedings between- the parties were hostile throughout. That Tuttle then claimed title to the premises in question, under a mortgage executed By Gridley to him; and the point in dispute between-them was whether that mortgage was- usurious- or not. That he gave the cognovit m obedience to the directions* of the award* having previously agreed to do so, in- the event , of an award* in favor of Tuttle.
The counsel for the defendant, upon this- evidence, *251 insisted, first, that the entry of'Tuttle under the ejectment suit arid the award, destroyed- the presumption of. a title in Gridley, arising from his having been in possession when the judgment of the lessor (Hills) was recovered against him; and that it wás incumbent ori-the plaintiff ’to give other evidence of a title to, or interest in the premises in question, in Gridley, than the-mere fact of his possession;, secondly, that it was not- shown that Gridley ever had: any interest. in the premises, which could be bound- by a" judgment; and thirdly, that the sheriff’s sale and deed, under which the plaintiff claimed, having been made and given while Tuttle was in possession, holding in hostility to Gridley, and all others, were inoperative- and void. The- court, however, ruled, that upon the evidence as it stood, the plaintiff was entitled to reeover.
The defendant then- gave in evidence a1 deed from Gridley and wife to him, for the premises in question, bearing date the 1st of April, 1817,-which was acknowledged the 11th of June, 1817; but it was- not recorded. The consideration expressed was $1000. The court ruled that this deed, not having been- recorded-, was inoperative and void as against Hills-the lessor, whose-deed from the sheriff was recorded, unless *notice of the deed’ to the defendant could be brtiught home to- him, at- or before the sheriff’s sale, which was not at'tempted-.-
The- defendant then gave? in evidence a mortgage" from Gridley to him, upon the premises in question, dated September 12th, 1815, for securing the sum of $775 35. This' mortgage Was duly acknowledged and registered.It was also duly foreclosed under the statute, and, upon such foreclosure, the defendant became the purchaser of the mortgaged premises on the 18th of February, 1818.
The plaintiff alleged that the mortgage was usurious. The question of usury Was submitted by the judge to the jury upon the evidence given by the parties.
The plaintiff" then proved, (the defendant objecting to the dompeteiicy arid- relevancy of the evidence,) that the defendant had recognized the judgment under which he claimed, and had requested him to sell Gridley’s propetry *252 under it, and had agreed to purchase the premises in ques tion under it, at the amount of the judgment, in order to establish his title, but, upon the day of sale, refused to perform his agreement.
The defendant then gave some evidence as to the delivery of the deed of April, 1817, which it is not material to state, as the judge ruled, that if the deed was then delivered, it was inoperative against the plaintiff, inasmuch as it had not been recorded.
The judge charged the jury that the plaintiff was entitled to their verdict, unless they should find that the mortgage from Gridley to Tuttle was free from usury; and he submitted that question to them upon the evidence. They found for the plaintiff.
The principal questions presented by this case, are,
1. Whether the justice’s judgment, under which the plaintiff claims, was proved by competent evidence;
2. Whether the deed from the then late sheriff to the plaintiff was well executed by his deputy;
3. Whether the presumption of title in Gridley, the defendant in the judgment of the lessor of the plaintiff, arising from Gridley’s possession at the time w'hen the judgment was obtained, and execution issued, was destroyed, or the plaintiff’s rights affected, by the entry of Tuttle, under his judgment *and execution in ejectment, prior to the day of sale, under the judgment of the lessor of the plaintiff;
4. Whether the premises in question were held adversely when the sheriff’s deed to Hills was given, so as to affect its validity.
1. In Jackson ex dem. Witherell and Hyde, v. Jones, (a) argued in August term, 1827, the question was presented as to the proper manner of proving a judgment rendered by a justice of the peace, a transcript of which had been certified by the justice and filed or recorded in the county clerk’s office, under the statute. The court had come to the conclusion, before the argument in this cause, that an *253 exemplification of the transcript filed in the clerk’s office was competent, and, prima facie, sufficient evidence of the rendition of the judgment; and an opinion to this effect had been prepared in that case; but, as the judgment was not entered, we thought proper to suspend it for further consideration, as the question was very ably discussed by the counsel in this cause. Our conclusion, however, remains unchanged.
The question is by no means free from difficulty; but we think the legislature, when they made provisions for rendering justice’s judgments a lien upon land, Under which it may be sold, and the title transferred to the purchaser, must have intended that the document filed in the clerk’s office, and upon the filing of which the judgment is to be entered or docketed, should be a substitute for an ordinary judgment record.
There would be no safety in purchasing real estate under such a judgment, if the purchaser, at any period however remote, whenever his title was questioned, were obliged to produce the magistrate before whom the judgment was obtained, together with his docket, in order to establish the fact of a judgment having been obtained. How is the fact to be made out, if the magistrate dies, and his docket cannot be found, or he removes away, and carries his books with him ?
The transcript, it is conceded, is an authority to the clerk to issue an execution. It must, therefore be evidence of a judgment having been rendered ; for nothing but a judgment can warrant an execution. If evidence of a judgment for *that purpose, why should it not be for the purpose of sustaining a title acquired by the purchaser under the execution thus issued ?
It is true the act does not require that the certificate or transcript of the justice should be sworn to by him, or be authenticated by any collateral evidence; and that there is, therefore, room for abuse in the exercise of his authority. The act undoubtedly might have been better guarded; but we think there is less danger in the construction which we give to it, than in that for which the counsel for the defend- *254 rant contends ; .and it is for the legislature, not the court, to provide-against the dangers which aré suggested.
,2. In Jackson ex dem. Scofield, v. Collins, (3 Cowen, 89,) it was.-held .that a-deputy.sheriff may complete an execution by sale and conveyance, after the sheriff goes out of office, provided the .execution was levied -before. This -disposes of the .second :point.
3. The plaintiff’s judgment, it will be recollected, .was docketed the ,4th of -April, 1820, and his execution levied -on the 18th -.of July following ; Qridley, the defendant in .the judgment, being,then in possession.
On the 20th of August,-Gridley. gives relict,a-mvl cogm- ■ vit in an action of ejectment brought for? these .premises by Tuttle, the defendant. That .cogncwi. is. given in-obedience to an. award of-arbitrators. The arbitration-bond bears date the 31st of May, 1820, nearly two months after the •plaintiff^ judgment.;-..and,under-the judgment in ejectment so confessed, Tuttle, in the latter part qf August, -.1-820, obtains the possession of. the premises ;-,and.the sale on the plaintiff’s execution took place, on the ,1.3th of■ October- following. The/question is, whether, ■ under these-circumstances, the plaintiff.was bound to .give .any other evidence of Gridley’s title to,- or interest in the premises, than the fact of-his-being, in possession when the judgment was ren dered, and of his having been so for a long time before.
:If the judgment in ejectment .had been obtained in the regular course of litigation, I should have: entertained no doubt that-jt would, have-terminated all presumptions in •favor of Gridley’s title, arising from his possession prior to that time. *That ejectment suit .was commenced in 1-818; • and if Hills; the present lessor, had,obtained poss.ession.of the premises under a sale upon his judgment; he might have been turned'out of-.possession by Tuttle, by virtue .of his recovery in ejectment. A judgment in ejectment authorises the plaintiff to take possession of the .premises, whoever-maybe in possession of them. The defendant in an, ejectment suit cannot - defeat the,action by transferring the possession- to..anothex, either with or without consideration. Whoever- succeeds to his possession,, succeeds also to the perils of the. suit.
*255 But in this case the judgment in ejectment was not obtained upon a trial or upon a default; but upon a eognovit given in pursuance of the award of arbitrators. It stands, then, precisely as though there had been no suit in ejectment, but the parties had submitted their differences in relation to these' premises to arbitrators, and the possession had been delivered up by Gridley in consequence of their award. Arbitrators, we well know, proceed upon equitable, not strictly legal principles, in their adjudications ; and I apprehend that a change of possession, in obedience to an award, cannot, as against a third person, situated as the lessor of the plaintiff in this case is, impose upon him the necessity of showing any other evidence of title in the defendant in his judgment and execution, than his possession when the judgment was obtained.
But admitting that the judgment in ejectment in this case is to be considered as a hostile and legal judgment, it appears from the testimony of Mr. Sill, that Tuttle claimed title to the premises in question in that suit, under a mortgage given by Gridley to him; and that the only point in dispute was, whether the mortgage was usurious or not. This was undoubtedly the same mortgage which the defendant has given in evidence in this case, and which the jury have found to be usurious.
The defendant, -by exhibiting the mortgage, admits Gridley’s title at that time; and the plaintiff, by showing that mortgage to have been usurious, shows that Gridley’s title was not affected by it.
*4. If these views are correct, then the defendant, though he was in possession when the sale took place under the execution of Hills, stood precisely in Gridley’s place, and there is no pretence of his possession being adverse, so as to affect the deed of the sheriff to Hills, admitting the principle, that land held adversely is incapable of grant to apply to judicial sales and conveyances. [1]
*256 The deed from Gridley to Tuttle was properly rejected.' Tuttle never was in possession under it. Gridley remained in possession until 1820 ; and Tuttle, by receiving the deed from the arbitrators as a part of their award, seems to have admitted that it had not previously been delivered. But at all events Gridley, remaining in possession, had an interest in the land, which was barred by the lessors’ judgment, and was capable of being sold under it.
Motion for new trial denied.

 Ante, 182.

 This decision was reversed on error. See S. C. 6 Wen. 213. See also Parks v. Jackson, 11 id. 242. See also Jackson v. Post, 15 Wen. 588. Hooker v. Pierce, 2 Hill, 650. See Jackson v Post, ante 125, 1.